Argued and submitted October 26, 2001, reversed and remanded for
reconsideration October 16, 2002

# ENTRADA LODGE, INC.,
dba Best Western Entrada Lodge,
*Petitioner,*

*v.*

# BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

## 25-00; A111406

56 P3d 444

Stanley D. Austin argued the cause for petitioner. With him on the brief were Gregory P. Lynch and Hurley, Lynch & Re, P.C.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

Edmonds, P. J., concurring.

## ARMSTRONG, J.

Entrada Lodge, Inc., seeks review of an order of the Commissioner of the Bureau of Labor and Industries that determined that Entrada had violated complainant's right to return to work after she had completed family leave. ORS 659A.171(1).[1] We review for substantial evidence and errors of law, ORS 183.482(8)(a), (c), and reverse and remand.

We relate the facts as found by the commissioner. In January 1998, Entrada's general manager, Ritchie, hired complainant as a housekeeper. Complainant worked in that capacity for nearly seven months, averaging 23 hours per week during that time. Sometime that spring, complainant told Ritchie that she was pregnant and that she intended to take family leave near the end of her pregnancy. At the end of July, complainant told Entrada that she was beginning her family leave, and Ritchie told her to contact him when she was ready to return to work.

Although she had several more weeks of family leave available, complainant contacted her doctor's office on September 24 to inquire about returning to work because her family needed her income. After being told that it was all right for her to return to work, she contacted Ritchie and asked him to reinstate her to her housekeeping job at Entrada.

When complainant began her family leave, Entrada employed 10 housekeepers. Seven of those housekeepers quit while complainant was on family leave. Entrada hired three more housekeepers during that time, two of whom, Garfield and Crain, were still working for Entrada when complainant asked to return to work. Garfield and Crain each worked a number of hours for Entrada between September 24 and October 7, but complainant did not. Entrada eventually assigned complainant work on October 10. However, the lack

---

[1] When the commissioner issued the amended order in this case, the statutes comprising the Oregon Family Leave Act were codified in ORS chapter 659. *See* ORS 659.470 - 659.494 (1999). The legislature renumbered those statutes in 2001, placing them in ORS chapter 659A, but did not alter the text that is at issue in this case. *Compare id. with* ORS 659A.150 - 659A.186. For convenience, we refer to the current version of the statutes throughout the opinion.

of work at Entrada forced complainant to look for another job. On October 20, she was hired as a housekeeper by another inn.

Complainant filed a complaint with the Bureau of Labor and Industries on October 28 that alleged that Entrada had violated her rights under the Oregon Family Leave Act. Ultimately, after a contested case proceeding, the commissioner issued an amended final order that concluded that Entrada had violated the Act by failing to restore complainant to her prior employment position at the conclusion of her family leave. ORS 659A.171(1). In reaching that conclusion, the commissioner stated that, as a general rule,

> "where an 'eligible' employee such as Complainant occupies a position involving nonsupervisory, unskilled labor in which the hours worked vary considerably and turnover is high, making it virtually impossible to 'track' any one position * * *: (1) Any worker hired during an eligible employee's leave to perform the same work that the eligible employee performed before commencing leave meets the definition of 'replacement worker' under [ORS 659A.171(1)]; and (2) After the eligible employee attempts to return to work, the employer must give that employee the opportunity to work any hours that the replacement worker would have otherwise been scheduled to work."

The commissioner applied that rule to this case and determined that Garfield and Crain met the definition of "replacement workers" under ORS 659A.171(1). Consequently, once complainant told Ritchie that she was ready to return to work, Entrada was required to give her the opportunity to work any hours that Garfield and Crain were assigned to work. Entrada's failure to offer complainant that work constituted a failure to restore her to her employment position and, according to the commissioner, constituted an unlawful employment practice.

■ On review, Entrada essentially argues that the record lacks sufficient evidence to support the commissioner's finding that Entrada failed to restore complainant to her prior employment position. We cannot resolve that issue, however, because we conclude that the commissioner failed to make the findings that he had to make in order to find a violation of the Act. The commissioner characterized the case

as turning on the status of the employees who were hired while complainant was on family leave. That is not the proper focus. As we will explain, the Act requires the commissioner to determine the employment rights, benefits, and position that complainant would have enjoyed had she not taken family leave and to compare them against those that she enjoyed on her return from family leave. Because the commissioner failed to do that, we reverse the case for reconsideration.

■     The Oregon Family Leave Act requires employers with 25 or more employees to provide up to 12 weeks of unpaid leave to eligible employees under specified circumstances. *See* ORS 659A.153 - 659A.162. On returning from family leave, an

> "employee is entitled to be restored to the position of employment held by the employee when the leave commenced if that position still exists, without regard to whether the employer filled the position with a replacement worker during the period of family leave."

ORS 659A.171(1). However, the employee is not entitled to

> "[a]ny right, benefit or position of employment other than the rights, benefits and position that the employee would have been entitled to had the employee not taken the family leave."

ORS 659A.171(3)(b).

■ ■     The Act seeks to ensure that employees suffer no employment disadvantages as a result of taking family leave, other than the loss of income while on leave. The Act also provides, however, that employees are entitled to receive only those employment advantages that they would have enjoyed had they not taken family leave. Consequently, the determination whether an employer has violated the reinstatement right of an employee under the Act requires a determination of the employment advantages that the employee would have enjoyed with the employer if she had not taken family leave. Those advantages must then be compared with the advantages that the employee actually enjoyed on her return to employment. If the employment advantages enjoyed by the employee on her return fall short of those that she would

have enjoyed had she not taken family leave, then the employer has failed to restore the employee to her employment position as required by the Act.

Given that framework, we turn to the commissioner's order. In his order, the commissioner stated a rule that is intended to apply to all employees who occupy "a position involving nonsupervisory, unskilled labor in which the hours worked vary considerably and turnover is high." Under that rule, any worker hired while an employee is on family leave is deemed to be a "replacement worker" and, once the employee on family leave attempts to return to work, the returning employee is entitled to work any hours otherwise scheduled for the replacement worker.

■ There are two problems with that rule. First, it fails to address the determinative issue under the Act, which is whether the employer restored the employee to her employment position by giving her the rights, benefits, and position that she would have enjoyed had she not taken family leave. The clause in ORS 659A.171(1) that gives an employee the right to return to her prior position "without regard to whether the employer [has] filled the position with a replacement worker" is intended to make clear that the employment of replacement workers does not detract from an employee's right to return to work from family leave. That is an important principle in the balance that the legislature struck between the employee's need to take family leave and the employer's need to get work done while employees are on leave. However, the clause serves solely to preserve the reinstatement right that the Act establishes. It does not create a right that employees enjoy that is distinct from their reinstatement right.

Second, the rule could give employees greater employment rights and benefits on their return to work than they would have enjoyed had they not taken family leave. Under it, an employee who returns to work from family leave to an unskilled, nonsupervisory position of the type filled by claimant is entitled to work the hours assigned to any employee who does equivalent work who was hired while the returning employee was on family leave. That does not present a problem if the employment rights that the employee

would have enjoyed had the employee not taken family leave include the right to be assigned work ahead of later-hired or junior employees. If, however, the employee would not have had that right, then giving it to her would be inconsistent with ORS 659A.171(3)(b), which provides that a returning employee is not entitled to any right, benefit, or position other than those to which "the employee would have been entitled [had] the employee not taken the family leave."[2] That problem is addressed by discarding the rule and focusing, instead, on the comparison that the Act requires between the rights, benefits, and position that complainant would have enjoyed had she not taken family leave and those that she enjoyed on her return from family leave. That is the focus to which the commissioner must turn on remand.

Reversed and remanded for reconsideration.

**EDMONDS, P. J.,** concurring.

The commissioner's legal conclusion, or "rule," as the majority characterizes it, is dependent on his ultimate findings of fact. I write separately in this case because I believe that there is not substantial evidence to support the commissioner's findings, a point that the majority fails to address. Moreover, the legal conclusion that the commissioner draws from the evidence is not based on substantial reason. The following explains my positions.

In its first assignment of error, employer argues,

"The Commissioner held, without citing any controlling authority, that two employees hired by [employer] were 'replacement workers' as defined by ORS 659.484(1). The Commissioner further held that complainant was automatically entitled to any hours worked by these 'replacement workers' after complainant requested a return to work. Given the facts in this case, the Commissioner's unsupported legal conclusion [that the employees were 'replacement workers'] was in error."

---

[2] We need not resolve whether an employer's informal practice or policy of assigning work to earlier-hired or senior employees can be a right or benefit or represent an aspect of the position to which a returning employee would be entitled under the Act. That issue is not before us, so we express no opinion about it.

(Footnotes omitted.) The commissioner counters that employer violated complainant's rights under *former* ORS 659.484(1), *renumbered as* ORS 659A.171(1), "when it initially refused to schedule her for any hours, instead giving hours to Garfield and Crain, one or both of whom occupied [complainant's] former position."

The statutory section that is relevant to employer's assignment provides that

"[a]fter returning to work after taking family leave * * * an eligible employee is entitled to be restored to the position of employment held by the employee when leave commenced * * * without regard to whether the employer filled the position with a replacement worker during the period of family leave."

*Former* ORS 659.484(1).

In light of that section, the commissioner found that "[w]hen Complainant was hired, [employer] did not promise Complainant a specific schedule or number of hours she would work per week." As "ultimate findings of fact," (emphasis omitted), he found, in relevant part,

"6) During Complainant's absence, [employer] hired two housekeepers, [Garfield and Crain], on an as-needed basis to perform work that Complainant would have performed, had she not been off work on parental leave.

"* * * * *

"9) [Employer] did not assign any work hours to Complainant between September 25 and September 30, 1998. During that period, Garfield and Crain worked a total of 27 hours that Complainant could have worked.

"10) Between October 1 and October 15, 1998, Crain worked a total of 16.75 hours that Complainant could have worked. Complainant worked only 10.25 hours in that time. Had [employer] restored Complainant to her former position, she would have worked a total of 27 hours during that two week period."

Because complainant reported that she was ready to return to work on September 24, and based on his findings, the commissioner concluded that Garfield and Crain were "replacement workers" within the meaning of *former* ORS

659.484(1). Employer argues correctly that the evidence is unequivocal that it hired all housekeepers on an "as needed" basis and that it never guaranteed hours to any housekeeper. Moreover, the evidence shows that the workload was not divided equally among the housekeepers. Rather, according to the commissioner's findings, the number of hours worked by each housekeeper for any particular time period varied. Consequently, at the time that complainant took family leave, she was an on-call housekeeper[1] and the number of hours that she was given to work was dependent on the arbitrary discretion of her employer. The commissioner's finding that complainant would have worked the hours worked by Garfield and Crain is not supported by the evidence.

As the majority correctly points out, the determination whether employer has violated complainant's reinstatement rights under *former* ORS 659.484(1) after completion of family leave depends on whether the bureau could prove that complainant *would* have worked the hours that Garfield and Crain worked, had she not taken family leave. Employer's need for housekeepers is dependent on the tourist industry and the occupancy rates of its rooms. Consequently, employer retained the discretion to use its pool of housekeeping workers in a manner that resulted in a fluctuating number of workers and number of hours worked by any particular housekeeper. There appears to have been no effort by employer to divide the existing workload equally among the housekeeping employees at any given time.

For example, employer employed 11 housekeepers in July 1998, before complainant went on leave. None of those workers worked an equal numbers of hours for that period. During the time that complainant was on leave, eight workers left. By the time that complainant was ready to return to work, employer employed only five housekeepers, including Garfield and Crain, who had been hired after complainant went on leave. Again, for that particular time

---

[1] In light of the "on call" employment arrangement in this case, an important factual issue is whether Garfield or Crain was hired to take complainant's place when she took family leave. The commissioner made no finding on that issue. The reason for the absence of such a finding may be that the record will not support it. Complainant went on leave on July 22. Garfield started work on September 15, and Crain started work on September 17.

period, all the workers worked different numbers of hours. In sum, it appears that at all relevant times, housekeepers were not guaranteed any particular number of work hours.

Nonetheless, in the face of that evidence, the commissioner reached the conclusion that Garfield and Crain were "replacement workers" within the meaning of the statute. "To replace someone" means "to take the place of: serve as a substitute for or successor of [.]" *Webster's Third New Int'l Dictionary* 1925 (unabridged 1993). Because complainant's only right under the statute upon reinstatement was to become a member of the pool without any guaranteed work hours, it is difficult to perceive, under the facts as found by the commissioner in this case, how Garfield and Crain "substituted" for complainant or worked "her work hours" within the ordinary meaning of the phrase "replacement worker."

In his ruling, the commissioner attempted to reason around the deficiency in the evidence. He ruled that any worker hired during complainant's absence was a "replacement worker" *ipso facto* and that, because Garfield and Crain worked hours that complainant *could* have worked, employer violated the Oregon Family Leave Act. His conclusion is erroneous because there is not substantial evidence in the record to support his ultimate findings that Garfield and Crain worked the particular hours that claimant *would* have worked, had she not gone on family leave. Moreover, the commissioner's legal conclusion that Garfield and Crain were "replacement workers" for complainant on those facts is a *non sequitur*. It is not reasonable to conclude from the fact that Garfield and Crain were hired after complainant left that the hours they worked were "replacement hours" for the hours that complainant would have worked, had she not gone on family leave.

On remand, the commissioner must do more than adjust the focus of his proposed rule of law. He must look behind his ultimate findings of fact and determine whether, in fact, the record supports a finding that the work done by Garfield and Crain "replaced" the work that would necessarily have been done by complainant, had she not gone on leave. That is the factual inquiry that *former* ORS 659.484(1) requires, and it cannot be satisfied by conclusory "ultimate

findings" that are unsupported by the evidence, or legal reasoning that attempts to bridge evidentiary gaps in the record.[2]

---

[2] In its brief, the commissioner suggests that to reject its legal conclusion will result in a loophole for employers to avoid the Oregon Family Leave Act. If, in fact, the commissioner is correct, that is a problem that can be addressed only by the legislature.